446 A.2d 905

**Marian M. McNAIR, Administratrix of the Estate of Earl P. McNair, Deceased,**

**v.**

**Norbert WEIKERS, Hirsch Wachs, Paul Richter and Allegheny General Hospital, Appellants.**

**Marian M. McNAIR, Administratrix of the Estate of Earl P. McNair, Deceased**

**v.**

**Jules PUSCHETT and Rahat Chaudhry, Appellants.**

Superior Court of Pennsylvania.

Argued Feb. 10, 1981.

Filed Feb. 19, 1982.

Reargument Denied July 2, 1982.

Petition for Allowance of Appeal Denied Oct. 12, 1982.

John D. Rhodes, Pittsburgh, for appellants at No. 487 and for appellees at No. 488.

John C. Conti, Pittsburgh, for appellants at No. 703.

Kenneth W. Behrend, David M. Moran, Pittsburgh, for McNair, appellee.

Before BROSKY, DiSALLE and SHERTZ, JJ.

SHERTZ, Judge:

In the first of these consolidated appeals, Appellants challenge the lower court's grant of a new trial. The decision of the court en banc rested on two grounds: (1) the trial court abused its discretion in that it improperly refused Appellee's request to present rebuttal evidence, and (2) the trial court abused its discretion in that it improperly prohibited Appellee from filing a supplemental pretrial statement and from presenting certain expert medical testimony. Appellants contend the court en banc erred in granting a new trial. We disagree and therefore affirm.[1]

In the second appeal, Appellants contend that the court below erred in denying their motion for summary judgment.[2] We agree and therefore reverse.

I.

The facts of this case can be summarized as follows. Appellee brought wrongful death and survival actions alleging that medical malpractice on the part of Appellants caused the death of her husband. The decedent, who had a

1. Since we conclude that the grant of a new trial was warranted on the first of these grounds, we need not and do not address the second.

2. Although an order denying a motion for summary judgment is interlocutory, the court below made the certification specified in, and we granted permission to appeal pursuant to, the Act of July 9, 1976, effective June 27, 1978, as amended, 42 Pa.Con.Stat.Ann. § 702(b). See Rule 1311, Pa.R.A.P.

prior history of hypertension, contracted Guillian-Barre syndrome. In April, 1974, he was admitted to Allegheny General Hospital, an Appellant herein, where he was treated by several physicians, including Appellants Weikers, Wachs, and Richter. During the course of this treatment, the decedent was given the drug Aldomet in an attempt to lower his blood pressure. Although this treatment proved successful in lowering the blood pressure, decedent contracted a high fever and died several days after entering the hospital. The cause of his death is the dispute underlying this lawsuit.

At trial, Appellee offered into evidence, without objection, those sections of the Physician's Desk Reference pertaining to Aldomet, in order to prove that the decedent had received negligent care. That is, Appellee attempted to demonstrate that, in failing to give due consideration to the procedures and precautions set forth in the aforementioned publication, Appellants negligently caused the death of her husband.

Appellants, on the other hand, undertook to prove that the decedent had received proper medical care during his hospitalization. To this end, they presented the testimony of Dr. Puschett,[3] a specialist in renal-electrolyte medicine, who was primarily responsible for the treatment of decedent's hypertension. Dr. Puschett testified on cross-examination, as follows, with regard to Aldomet and its proper administration:

Q  Well, sir, earlier you said that you did not necessarily agree with what the manufacturer said in the Physician's Desk Reference?

A  Yes. I based that on my clinical judgment and experience with the agent (Aldomet) and the work of others.

Q  Well, you say you used this on patients and you found from your observations that it worked differently than the manufacturer's recommendations?

**3.** Dr. Puschett is an Appellant in the second of these consolidated appeals.

A    Not the recommendations, what we found, for example, was that whereas the Physician's Desk Reference which, by the way, I don't think is holy in any way, whereas the Physician's Desk Reference says that the drug's onset is quite different from what I mentioned to you earlier, that those of us with a lot of clinical experience find that it works more rapidly, much more rapidly under actual clinical settings. And, we found that it might be biologically effective in a shorter period of time than the time given by the manufacturer.

N.T. at 438–39. (parenthesis added).

Q    It (the Physician's Desk Reference) does not say what you said, to try to determine if the fever is from something else?

A    Well, the book (Physician's Desk Reference) does not take over for the clinical judgment, sir. The book does not tell you how to practice medicine, sir.

N.T. at 442. (parenthesis added)

Q    Now, let's assume that the time lag for the Aldomet was exactly as the manufacturer's recommendation for the 4 to 6 hours, and that the carry-over is 10 to 16 hours as the manufacturer described, let's assume that as a fact. Now, at 8 o'clock a. m. on the 8th of May, how far back would we still be getting the effects of the Aldomet?

A    Well, you see, you have asked me to make an assumption. I don't have all the facts of the matter and there is no way I can do that. I just cannot assume that . . . . That is why I mentioned to you earlier in the day that this type of evidence suggests to me very clearly that the indications in the Physician's Desk Reference to which you are referring is inaccurate.

Q    Well, you assumed that the Physician's Desk Reference is inaccurate at the point it says that there is a four to six-hour lag and the carry-over to 10 to 16 hours, you will not accept that assumption?

A No, that does not agree with the other authoritated (sic) things on the subject.

N.T. at 481–82.

At the conclusion of Appellants' case-in-chief, Appellee sought to introduce rebuttal evidence, in the nature of expert medical testimony and medical publications, to impeach the medical testimony presented by Appellants, most especially the testimony of Dr. Puschett. The trial court refused to admit this evidence. Following a jury verdict in favor of all four Appellants, Appellee filed a Motion for New Trial, which was granted, and this appeal followed.

■ It is axiomatic that, absent a clear abuse of discretion or an error of law which controlled the outcome of a case, this Court will not reverse the grant of a new trial by the lower court. *Izzi v. Philadelphia Transportation Company*, 412 Pa. 559, 195 A.2d 784 (1963). In the instant appeal, Appellants first argue that the trial court properly precluded the proffered rebuttal evidence and that the court en banc's action in granting a new trial therefore constituted a clear abuse of discretion. That is, Appellants contend that Appellee, as part of her case-in-chief, was bound to establish the proper administration and dosage of Aldomct and she attempted to do so through the use of the Physician's Desk Reference. Dr. Puschett's testimony, Appellants argue, merely contradicted the evidence presented by Appellee on this point and it therefore did not afford a basis for allowing rebuttal testimony.

■ While we agree that Appellee was required to establish the proper use of Aldomet, we reject Appellants' contention that the proposed testimony was not proper evidence for impeachment. As pointed out by Appellee, Appellants "placed in issue, and used as a grounds for a defense, the clinical experience and superior knowledge of Dr. Puschett in the use of Aldomet over those standards established by the plaintiff in her case in chief through the Physician's Desk Reference." Brief for Appellee at 22. Although the

decision whether to admit rebuttal testimony is within the discretion of the trial court, *See, Mishkin v. Redevelopment Authority*, 6 Pa.Cmwlth. 97, 293 A.2d 135 (1972), *Murphy v. Philadelphia*, 420 Pa. 490, 218 A.2d 323 (1966), the exercise of that discretion is subject to certain well-established limitations. One such limitation, as pertinent hereto, was described by our Supreme Court as follows:

> A litigant has the privilege of offering rebuttal testimony, and where the evidence proposed goes to the impeachment of the testimony of his opponent's witnesses, it is admissible as a matter of right. Rebuttal is proper where facts discrediting the proponent's witnesses have been offered. Wigmore on Evidence (2d Ed.) vol. 4, p. 20 § 1873. "For matters properly not evidential until the rebuttal, the proponent has a right to put them in at that time, and they are therefore not subject to the discretionary exclusion of the trial court." Id., p. 25, § 1873.

*Schoen v. Elsasser*, 315 Pa. 65, 66, 172 A.2d 301–02 (1934).

Insofar as the proffered rebuttal evidence in this case is concerned, Appellee sought thereby to impeach evidence introduced in defendant's case in chief, to wit, Dr. Puschett's asserted superior knowledge and clinical expertise concerning the use and characteristics of Aldomet. The court en banc therefore properly concluded that Appellants had produced evidence which Appellee should have been permitted to rebut with at least some of the proposed evidence and that the trial court's disallowance of same was improper.

Finally, Appellants argue the proferred evidence was properly excluded because it was offered as substantive, rather than impeachment, evidence. A review of the record, in context, simply does not support this proposition.

Order affirmed and case remanded for further proceedings. Jurisdiction relinquished.

## II.

The wrongful death and survival action against Appellants, Puschett and Chaudhry, was commenced by Complaint on May 30, 1979, more than five years after the death of

Earl McNair. In substance, Appellee averred that, while decedent was a patient at Allegheny General Hospital during April and May, 1974, Appellants negligently caused Aldomet to be so improperly administered as to cause hypertensive shock resulting in the death of Earl McNair on May 10, 1974. Appellants filed an Answer and New Matter and Appellee filed a Reply thereto. Appellants thereupon moved for summary judgment on the grounds that the action was barred by the Statute of Limitations and by the principles of res judicata and collateral estoppel. The court below denied Appellants' Motion and this appeal followed.

■ Appellee acknowledges that this action was initiated more than one year after decedent's death and more than two years after the injury occurred.[4] She contends, however, that Appellants concealed material facts essential to Appellee's recognition of the potential existence of a cause of action against Appellants and they are thereby estopped from asserting the Statute of Limitations.[5]

4. The applicable Statute of Limitations for wrongful death actions provided that, "the action shall be brought within one year after the death and not thereafter." 12 Pa.Stat.Ann. § 1603 (Purdon 1953) (repealed) 42 Pa.Cons.Stat.Ann. § 5524 (Purdon Pamphlet 1981). The applicable Statute of Limitations for survival actions was "two years from the time the injury was done." 12 Pa.Stat.Ann. § 34 (Purdon 1954) (repealed) 42 Pa.Cons.Stat.Ann. § 5524 (Purdon Pamphlet 1981).

5. In the court below, Appellee sought to avoid the bar of the Statute of Limitations by relying on the so-called "discovery rule". *See Acker v. Palena*, 260 Pa.Super.Ct. 214, 393 A.2d 1230 (1978). The trial court, as its Opinion in support of the order denying Appellants' motion for summary judgment indicates, also considered the "discovery" rule" applicable. The court, stating that whether a key factor was discoverable within the time frame of the Statute of Limitations was a question of fact, which it could not permissibly resolve, understandably denied Appellants' Motion.

Both the trial court and Appellee were in error in their reliance on the "discovery rule", inasmuch as the rule has recently been held to be inapplicable to wrongful death and survival actions. *Anthony v. Koppers Company, Inc.*, 496 Pa. 119, 436 A.2d 181 (1981). Consequently, any issue of fact bearing upon the applicability of the "discovery rule" is irrelevant and affords no basis for the denial of Appellants' motion for summary judgment.

It is unquestionably correct, as Appellee asserts, that where, "through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry," the defendant is estopped from invoking the bar of the Statute of Limitations. *Schaffer v. Larzelere*, 410 Pa. 402, 405, 189 A.2d 267, 269 (1963); *Plazak v. Allegheny Steel Co.*, 324 Pa. 422, 188 A. 130 (1936). Moreover, the defendants' conduct need not rise to fraud or concealment in the strictest sense, that is, with an intent to deceive; unintentional fraud or concealment is sufficient. *Walters v. Ditzler*, 424 Pa. 445, 227 A.2d 833 (1967); *Nesbitt v. Erie Coach Company*, 416 Pa. 89, 204 A.2d 473 (1964); *Schwab v. Cornell*, 306 Pa. 536, 160 A. 449 (1932); *Acker v. Palena*, supra. Mere mistake, misunderstanding or lack of knowledge is insufficient however, *Schaffer v. Larzelere*, supra; *Keating v. Zemel*, 281 Pa.Super.Ct. 129, 421 A.2d 1181 (1980); and the burden of proving such fraud or concealment, by evidence which is clear, precise and convincing, is upon the asserting party. *Nesbitt v. Erie Coach Company*, supra; *Bonfitto v. Bonfitto*, 391 Pa. 187, 137 A.2d 277 (1958); *Hertz v. Hardy*, 197 Pa.Super.Ct. 466, 178 A.2d 833 (1962).

In considering the foregoing principles instantly, within the context of a motion for summary judgment, we are mindful of the heavy burden Appellants must meet. As we recently stated in *Acker v. Palena,* supra:

> The law on summary judgment is well-settled. "Summary judgment is made available by Pa.R.C.P. 1035, 12 P.S. Appendix, when the pleadings, depositions, answers to interrogatories, admissions on file and supporting affidavits considered together reveal no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. This severe disposition should only be granted in cases where the right is clear and free from doubt. To determine the absence of a genuine issue of fact, the court must take the view of the evidence most favorable to the non-moving party, and any doubts must be resolved against the entry of judgment." (citations omitted). *Husak v. Berkel, Inc.*, 234 Pa.Super. 452, 458,

341 A.2d 174, 177 (1975). *See also, Amabile v. Auto Kleen Car Wash,* 249 Pa.Super. 240, 376 A.2d 247 (1977); *Bowman v. Sears, Roebuck & Co.,* 245 Pa.Super. 530, 369 A.2d 754 (1976). The moving party bears the burden of demonstrating clearly that there is no genuine issue of material fact. *LeGrand v. Lincoln Lines, Inc.,* 253 Pa.Super. 19, 384 A.2d 955 (1978). *See also, Prince v. Pavoni,* 255 Pa.Super. 286, 302 A.2d 452 (1973); *Schacter v. Albert,* 212 Pa.Super. 58, 239 A.2d 841 (1968).

Id. 260 Pa.Super. at 218, 393 A.2d at 1232.

Further, Pa.R.C.P. 1035(d) provides that:

... When a motion for summary judgment made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response by affidavits or as otherwise provided in this rule must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Viewing the record in the foregoing light, it is clear beyond peradventure that there is no genuine issue as to any material fact relating to fraud or concealment on the part of Appellants. In actuality, Appellee's evidence on the issue is utterly devoid of any showing of fraud or concealment by either Appellant. To the contrary, that evidence, consisting of the affidavits of Appellee and Dr. Theodore Rodman, rather demonstrates that Appellee failed to institute a timely action due to her own mistake, misunderstanding or lack of knowledge.

Appellee's affidavit, submitted in opposition to Appellants' motion for summary judgment, consisted solely of two documents she had filed in connection with her lawsuit against Allegheny General Hospital, Norbert Weikers, Hirsh Wachs and Paul Richter; a Petition seeking leave to file a second amended complaint, and a motion for leave to present expert medical testimony or for a continuance to file expert report. These documents disclose the following pertinent facts.

Appellee commenced her first action by Writ of Summons on April 18, 1975; she had received the hospital records sometime prior to January 27, 1976, on which date she forwarded them to Dr. David Beal for review; by March, 1976, Appellee had received a complete legible copy of the hospital records and a medical opinion from Dr. Donald Soxman which indicated, inter alia, that hospital personnel had failed to follow physicians' orders in the administration of Aldomet; during August, 1976, Appellee submitted the hospital records and pathology slides to Dr. Cyril Wecht and on August 30, 1976, she filed a complaint, wherein she averred that the physician defendants therein had administered Aldomet "beyond the time of appropriate therapy ... (and) when it was not safe or proper to do so"; on December 27, 1976, Dr. Wecht submitted his report which stated, in part:

> There appears to be a discrepancy in the records between the physicians' orders and the nurses' notes regarding the administration of Aldomet, *with a serious question related thereto concerning the possible injudicious use and adverse effects of this drug.*

(emphasis added); in February, 1979, Appellee, through discovery proceedings, obtained the defendants' experts' medical reports and, based upon the information contained therein, Appellee submitted the records and slides to Drs. C. Maynard Guest, Joshua Perper and Theodore Rodman; Dr. Perper suggested that the management of Aldomet be examined; Drs. Guest and Rodman, upon a review of the medical records, both indicated that the method and the amount of administration of Aldomet was a deviation from the standard of care and was a substantial factor in the shock which led to decedent's death.

Dr. Rodman's affidavit, also offered by Appellee in opposition to Appellants' motion for summary judgment, states: he was contacted by Appellee's counsel on May 20, 1979; *his initial review of the records indicated that the manner of the administration of Aldomet was improper* (emphasis added); the nurses' notes in the hospital record relating to the

administration of Aldomet designated a varying rate of microdrops per minute; these notes raised *serious questions* as to the amount of Aldomet administered but this could not be known for certain without converting the entries to the amount of the drug actually given; such a conversion formula was provided by the trial testimony of one of the defendant-physicians (Dr. Paul Richter); the total quantity of Aldomet administered was discernable by the utilization of the conversion formula and review of the nurses' entries; in Dr. Rodman's opinion, the manner in which the Aldomet was administered, as thus discerned, was highly improper and caused hypertension and shock resulting in decedent's death.

We have not set forth the foregoing detailed factual information to demonstrate, as Appellants' contend, that Appellee failed to exercise due diligence, nor to demonstrate, as Appellee contends, that she did. Neither contention is pertinent to the issue before us. Rather, the purpose of our careful review is to illustrate that there is not a scintilla of evidence to prove Appellee's contention that Appellants, the defendants herein, concealed anything. Taking a view of the evidence most favorable to Appellee and resolving all doubts in her favor, the most that can be said is that, if any concealment has been shown, it was effected by the nurses, and not by the Appellants.

As is evident from Appellee's brief, the "concealment" consisted of the particular nomenclature employed by the nurses and the manner in which they recorded the administration of Aldomet. Appellee states:

> "The physicians' order sheets in Mr. McNair's medical records indicate that Mr. McNair was first ordered to be given·250 Milligrams every six hours which was then increased to 500 milligrams every six hours ... Dr. Chaudhry, who was a resident working under the direction of Dr. Puschett, ordered 2 grams of Aldomet however it was to be given by continuous intravenous drip infusion and the nurses were directed to titrate or regulate the

infusion rate of the Aldomet according to the diastolic blood pressure.

. . . . .

> While the order for the administration of the Aldomet is thus on its face proper, *there was in fact hidden information within the hospital chart* which would indicate that the drug was in fact not properly administered. *This information . . . consisted of notations by the nurses interspersed among the nurses notes* that referred to the rate of the infusion of the Aldomet through the intravenous apparatus. These notes were such entries as "30–35 mgtts/min" . . . now know to refer to 30–35 microdrops per minute . . . These entries are not at fixed locations within the chart but are interspersed throughout the nurses' notes . . . The most important factor is that the notation of microdrops per minute does not in and of itself give any evidence of the actual amount of the drug contained in each of the microdrops.

Appellee's brief at 18–19. (emphasis added). Appellee thereafter continues:

> It was through the testimony of Dr. Richter illicited (sic) at the time of trial that a conversion was obtained... This is the first indication as to the exact amount of Aldomet being given to the plaintiff's decedent. . . . *it is absolutely clear that this information* concerning the amount of the administration of Aldomet *was concealed,* albeit unintentionally, *within the medical records. . . .*

Id. at 21. (emphasis added).

■ Appellee's reliance on *Schaffer v. Larzelere,* supra, and *Acker v. Palena,* supra, is misplaced inasmuch as, in both cases, it was alleged that the concealment which operated to toll the Statute of Limitations was effectuated by the defendants therein. The distinction is a most significant one. In order to relieve a party from the bar of the Statute, the concealing screen must have been erected by his *adversary. Nesbitt v. Erie Coach Company,* supra, 416 Pa. at 96, 204 A.2d at 477. Such has not been shown to be the case

here. Accordingly, we conclude that Appellants' Motion for Summary Judgment should have been granted.

The Order of the court below is reversed and case remanded for further proceedings consistent with this opinion. Jurisdiction is relinquished.

This case was decided prior to the expiration of SHERTZ, J.'s, commission of office.

DiSALLE, J., did not participate in the consideration or review of this case.