514 A.2d 930

Eva RITTER, Administratrix of the Estate of
Taazmayia Lang, Appellant

v.

THEODORE PENDERGRASS TEDDY BEAR
PRODUCTIONS, INC. and CBS Records, a
Division of CBS, Inc.

Superior Court of Pennsylvania.

Argued April 8, 1986.

Filed Sept. 9, 1986.

Michael R. Needle, Philadelphia, for appellant.

David F. McComb, Philadelphia, for appellees.

Before BECK, POPOVICH and HOFFMAN, JJ.

HOFFMAN, Judge:

This is an appeal from the judgment entered pursuant to the lower court's order granting appellee's preliminary objections and dismissing appellant's complaint against appellee. Appellant contends that the lower court erred in dismissing her complaint because (1) appellant's service of a writ of summons upon appellee's co-defendant was sufficient to toll the statute of limitations as to appellee; (2) appellant's failure to serve the writ of summons on appellee did not bar appellant from later commencing an action against appellee by serving a complaint upon it; (3) appellee could not raise the affirmative defense of statute of limitations in a preliminary objection; and (4) if appellee could raise the statute of limitations, appellant's complaint should not have been dismissed because (a) the time at which the statute began to run is unclear, (b) the statute does not bar appellant's cause of action, and (c) appellee is estopped from asserting the statute of limitations. For the following reasons, we vacate the lower court's judgment, reverse its order and remand for further proceedings.

Appellant is the administratrix of the estate of Taazmayia Lang. She brought the instant action as part of a suit in equity against musician Theodore (Teddy) Pendergrass; his production company, Teddy Bear Productions, Inc.; and appellee, CBS Records, a division of CBS, Inc. The suit is based upon a personal management contract between Lang and Pendergrass pursuant to which Pendergrass was to pay Lang ten percent of "all gross compensation" received by Pendergrass during the term of the contract and ten percent of any compensation received by Pendergrass "from any and all agreements entered into during the term of the [contract between Lang and Pendergrass] or from any and all extensions, renewals or substitutions extending beyond

the term of [that contract]." *See* Complaint, Exhibit A at 4. The contract, dated August 1, 1976, had a one-year term with options to renew for three consecutive one-year periods. On August 20, 1976, Pendergrass entered into a recording agreement with Assorted Music Co., Inc. (Assorted). This agreement, which had an initial term lasting until October 3, 1978 and contained options to renew for three one-year periods, provided that Assorted would pay royalties to Pendergrass for all recordings by him produced and sold by Assorted. On September 17, 1976, Pendergrass, Lang, and Assorted allegedly entered into an agreement that provided for Assorted to pay directly to Lang ten percent of all royalties owed Pendergrass under the August 20 agreement between him and Assorted. The letter agreement also directed Assorted to furnish Lang with copies of the royalty statements supplied to Pendergrass. Then, pursuant to a letter dated October 19, 1976, appellee allegedly assumed Assorted's obligations under its August 20 agreement with Pendergrass.

Appellant contends that appellee thereby assumed Assorted's obligations to pay Lang ten percent of Pendergrass's royalties and furnish her with royalty statements. Lang died on April 17, 1977. Because appellee has never paid any royalties to her or her estate, appellant claims that appellee has breached its obligations to her.

On April 14, 1983, appellant filed a writ of summons to commence this action. She arranged for the writ to be served upon Pendergrass and Teddy Bear Productions, Inc., but failed to have the writ served upon appellee. On April 14, 1985, appellant filed a complaint that was served upon Pendergrass, Teddy Bear Productions, Inc., and appellee. On June 7, 1985, appellee filed preliminary objections to the complaint. The lower court sustained those objections and dismissed appellant's complaint as to appellee in an opinion and order dated October 1, 1985. That order was reduced to judgment and this appeal followed.

Appellant first contends that the lower court erred in holding that appellant's complaint should be dismissed be-

cause "service was untimely" and in relying upon *Lamp v. Heyman,* 469 Pa. 465, 366 A.2d 882 (1976), in support thereof.[1] In *Lamp,* our Supreme Court held that "a writ of summons shall remain effective to commence an action only if the plaintiff refrains from a course of conduct which serves to stall in its tracks the legal machinery [s]he has just set in motion," and directed plaintiffs to "comply with local practice as to the delivery of the writ to the sheriff for service." *Id.,* 469 Pa. at 478, 366 A.2d at 889. The plaintiff in *Lamp* had impeded service of a writ of summons upon the defendant until after the statute of limitations had expired. The plaintiff's action was not dismissed, however, because the Court's ruling was prospective only.

■ In the instant case, appellant failed to make arrangements with the sheriff to have the writ of summons served upon appellee. Accordingly, we find that the writ was not effective to commence an action against appellee. *Cf. Farinacci v. Beaver County Industrial Development Authority,* 510 Pa. 589, 511 A.2d 757 (1986) (action dismissed where plaintiff filed writ of summons on last day of statutory limitations period but inadvertently failed to instruct and pay sheriff for service until writ had expired).[2]

■ Appellant's failure to serve the writ upon appellee, however, does not necessarily bar her cause of action against it. After an original writ of summons has been

1. The lower court's entire opinion and order reads as follows:
    AND NOW, this 1 day of Oct., 1985, upon consideration of the Preliminary Objections filed by CBS Records and the response thereto, it is hereby ORDERED that the Preliminary Objections are sustained and plaintiff's Complaint dismissed as to defendant CBS, it being the opinion of this Court that service was untimely. See *Lamp v. Heyman,* 469 Pa. 465, 366 A.2d 882 (1976).

2. Appellant contends that her service of the writ upon Pendergrass was sufficient to effect service upon appellee because appellee was in privity with Pendergrass. We disagree. Our rules of civil procedure provide the methods by which process may be served, and service upon a person in privity with a defendant is not one of the authorized methods. See Pa.R.Civ.P. 2180 (service of process upon corporation or similar entity) (rescinded effective January 1, 1986; current version at *id.* 424). We further note that appellant has not cited, and we cannot discover, any authority in support of her contention).

issued, it is effective as process for thirty days. *See* Pa.R.Civ.P. 1009(a) (rescinded effective January 1, 1986; current version at *id.* 401(a)).[3] When the thirty-day period expires, the writ may be reissued and served, or a complaint may be filed and served. *Id.* 1010 (rescinded effective January 1, 1986; current version at *id.* at 401(b)).

> If an action is commenced by writ of summons and a complaint is thereafter filed, the plaintiff instead of reissuing the writ may treat the complaint as alternative original process and as the equivalent for all purposes of a reissued writ, reissued as of the date of the filing of the complaint.

*Id.* 1010(e) (current version at *id.* 401(b)(5)). Here, although appellant failed to serve the writ of summons upon appellee, she did serve the complaint upon it. Under the rules of civil procedure, service of the complaint was sufficient to commence this action against appellee as of the date the complaint was filed, April 14, 1985.

■ The question then arises whether the service of the complaint was timely. Appellant correctly contends that appellee could not raise the affirmative defense of the statute of limitations in its preliminary objections. *See Lamp v. Heyman, supra* 469 Pa. at 470–71, 366 A.2d at 885; Pa.R.Civ.P. 1017(b)(4), 1030. Appellee, however, raised the timeliness of appellant's complaint in a preliminary objection asserting the bar of laches, not the statute of limitations;[4] laches may be raised by a preliminary objection in an equity action. *See* Pa.R.Civ.P. 1509(b).

---

**3.** All citations to the Pennsylvania Rules of Civil Procedure have been made to the rules governing the parties' actions at the time those actions were taken.

**4.** Although appellee filed several preliminary objections asserting grounds for relief other than laches, its memorandum of law in support of its objections addressed only the timeliness of the writ and complaint.

We note that appellee's memorandum contained argument that appellant's claim was barred by the statute of limitations. *See* Memorandum of Law in Support of Preliminary Objections of [Appellee] at 4. We decline to consider that argument on its own merits, however, for,

"While the defense of laches may be raised by preliminary objections, laches should never be declared unless the existence thereof is clear on the face of the record." *Estate of Marushak,* 488 Pa. 607, 610, 413 A.2d 649, 651 (1980) (citation omitted). This means that the party asserting laches must show, first, a delay arising from the other party's failure to exercise due diligence, and second, prejudice from the delay. *Id. See also Leedom v. Thomas,* 473 Pa. 193, 200, 373 A.2d 1329, 1332 (1977) (collecting cases). Whether this burden has been met is a factual question, answered by examining the circumstances of the particular case. *Leedom v. Thomas, supra,* 473 Pa. at 200–201, 373 A.2d at 1332–1333. *See Shapiro v. Shapiro,* 424 Pa. 120, 131, 224 A.2d 164, 170 (1966) (laches determined only after all circumstances of case examined); *Stahl v. First Pennsylvania Banking and Trust Co.,* 411 Pa. 121, 128, 191 A.2d 386, 390 (1963) (well-settled that complaint will be dismissed on preliminary objections only if laches clearly apparent) (collecting cases).

*Kehoe v. Gilroy,* 320 Pa. Superior Ct. 206, 212, 467 A.2d 1, 4 (1983). *See also Hansel v. Hansel,* 300 Pa. Superior Ct. 548, 556, 446 A.2d 1294, 1298 (1982) (application of doctrine of laches requires examination of entire record in addition to complaint), *allocatur denied.*

█ Here, we find that the existence of laches was not clear on the face of the record. Appellee argues in support of its allegation of laches that, if appellant's action had been brought in law rather than equity, it would have been barred by the applicable statute of limitations. It therefore argues that the action in equity should similarly be barred by the doctrine of laches. "Although statutes of limitation are not strictly and technically applicable to actions in equity, a court of equity will by analogy adopt and apply statutes of limitation." 14 Standard Pa. Practice 2d § 79:43 (1983) (footnote collecting cases omitted). The rationale

as noted previously, the statute of limitations was not, and may not be, raised by preliminary objections.

behind the adoption of statutes of limitation by courts of equity is that an action should not lie in equity if it would be barred at law. *See, e.g., Rush v. Butler Fair & Agricultural Association,* 391 Pa. 181, 185, 137 A.2d 245, 247 (1958).

Appellee's argument, that appellant's action would be barred in an action at law, is founded upon the premise that appellant's cause of action accrued, and the statute of limitations began to run, when the one-year term of Lang's contract with Pendergrass expired on August 1, 1977. *See* Brief for Appellee at 18. Both parties agree, that, because appellant's cause of action is founded upon a contract, the applicable statute of limitations in an action at law would be six years. 42 Pa. C.S.A. § 5527(2). Therefore, appellee argues that the statutory limitations period expired on August 1, 1983 and appellant's failure to effect service of process on appellee before that date would bar the action at law and should also bar it in equity.[5]

We disagree. Although Lang's duties under her contract with Pendergrass terminated, at the latest,[6] on August 1, 1977, Pendergrass had a continuing obligation to pay Lang ten percent of any compensation he received from agreements entered into during the term of his contract with Lang and from any extensions, renewals, or substitutions of those agreements *"extending beyond the term* of [the contract between Lang and Pendergrass]." *See* Complaint, Exhibit A at 4 (emphasis added).

When we examine the agreements Pendergrass allegedly entered into during the term of his contract with Lang, it becomes clear that Pendergrass's duty to pay Lang ten percent of the compensation he received pursuant to those

---

5. The lower court's reliance upon *Lamp v. Heyman, supra,* a case dealing with the effect of the statute of limitations upon service of process, indicates that the court accepted appellee's argument.

6. We note, without deciding the issue, that Lang's death in April, 1977 raises a question as to the date that her contract with Pendergrass terminated. *See George v. Richards,* 361 Pa. 278, 64 A.2d 811 (1949) (where contract involves services of person with particular skill, death of party possessing that skill terminates the contract).

contracts could potentially extend for years beyond the term of the management contract. Under the agreement between Pendergrass and Assorted, Assorted was to make periodic payments of royalties to Pendergrass. The letter agreement between Pendergrass, Assorted, and Lang modified that obligation so that Assorted was required to pay ten percent of those periodic payments directly to Lang and furnish her with royalty statements. The agreement between Pendergrass and Assorted had a term extending more than a year beyond the term of Lang's and Pendergrass's contract and was subject to three one-year renewals. Thus, the obligation to pay ten persent of Pendergrass's royalties to Lang, which appellant alleges appellee assumed when it assumed Assorted's contractual obligations, may have extended until October, 1981, or even later.[7]

Our courts have held that where installment or periodic payments are owed, a separate and distinct cause of action accrues for each payment as it becomes due. *See VanSciver v. VanSciver*, 337 Pa. 390, 395, 12 A.2d 108, 110 (1940); *Bush v. Stowell*, 71 Pa. 208, 211–12 (1872); *Pennsylvania Turnpike Commission v. Atlantic Richfield Co.*, 31 Pa. Commonwealth Ct. 212, 216–17, 375 A.2d 890, 892 (1977), *aff'd*, 482 Pa. 615, 394 A.2d 491 (1978). Here, Pendergrass's agreement with Assorted provided that he would receive any royalties that accrued "at least semi-annually." *See* Appellant's Answer to Preliminary Objections of Appellee, Exhibit B at 6. The agreement, pursuant to which appellee is alleged to have assumed Assorted's duties, modified that obligation by providing that appellee would account for and pay any royalties owed within ninety days of the expiration of its semi-annual accounting periods, which

---

7. The obligation to pay royalties to Pendergrass under the contract between Assorted and Pendergrass did not necessarily terminate at the same time as Pendergrass's recording obligations. Under that contract, the recording company had a continuing obligation to pay royalties to Pendergrass, at least semi-annually, based upon the wholesale price it received for his records.

ended every June 30 and December 31. *See id.,* Exhibit D at 2. Thus, appellant may have had a new cause of action accruing against appellee as often as twice a year. While appellant's claim for payments due more than six years before the date she served appellee with the complaint may be barred by the statute of limitations, and, by analogy, by laches, she still may have a viable claim for payments due within that six-year period.

In the instant case, it is impossible to determine from the record when, or if, appellee became obligated to make royalty payments to appellant and, thus, to determine when the statute began to run for each missed payment. Accordingly, we find that the existence of laches is not clear on the face of the record, vacate the judgment of the lower court, and reverse its order.[8] The case is remanded to the lower court for further proceedings.[9]

Judgment vacated and order reversed; case remanded for further proceedings consistent with this opinion. Jurisdiction is not retained.

8. Appellant also argues that appellee's failure to provide her with royalty statements amounted to fraud or conspiracy sufficient to estop appellee from asserting the statute of limitations. A defendant may be estopped from asserting the statute of limitations if by fraud or concealment the defendant causes the plaintiff to relax her vigilance or deviate from her right of inquiry. *McNair v. Weikers,* 300 Pa. Superior Ct. 379, 388, 446 A.2d 905, 909 (1982), *allocatur denied.* The plaintiff, however, must prove such fraud or concealment by clear, precise, and convincing evidence. *Id.* Here, we cannot say that appellee's failure to provide appellant with royalty statements amounted to concealment such as to cause appellant to relax her vigilance or deviate from her right of inquiry to protect her rights. Instead, appellant's failure to receive any royalties or royalty statements after a reasonable period of time should have caused her to increase her vigilance and employ her right of inquiry. Accordingly, we find that appellee was not estopped from asserting the statute of limitations, albeit as an analogy to the bar of laches.

9. Because the lower court dismissed appellant's complaint on the basis of appellee's preliminary objection asserting the bar of laches, it apparently did not consider the remaining preliminary objections raised by appellee. *See* Lower Court Opinion and Order, *supra* note 1. Upon remand, the lower court should consider appellee's remaining preliminary objections, if it has not already done so.