**FRESH START INDUSTRIES, INC., Plaintiff,**

**v.**

**ATX TELECOMMUNICATIONS SERVICES, Defendant.**

No. Civ.A. 02–1470.

United States District Court, E.D. Pennsylvania.

Dec. 11, 2003.

Matthew S. Wolf, Wolf & Booth, LLC, Haddonfield, NJ, for Plaintiff.

Gary A. Drakas, Saul H. Krenzel & Associates, Kristine Freyleue Collins, Saul H. Krenzel & Assoc., Saul H. Krenzel, Saul H. Krenzel & Associates, Philadelphia, PA, for Defendant.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Plaintiff Fresh Start Industries ("Fresh Start") is a New Jersey Corporation engaged in the business of telemarketing, with its principal place of business in Berlin, New Jersey. Defendant ATX Telecommunications Services[1] ("ATX") is a telecommunications company currently incorporated in Delaware that provides various types of long distance service, including, but not limited to, "800" number service. In July 1997, Fresh Start entered into a contract with ATX for long distance and "800" number service. That relationship came to an end in March 2002 when ATX terminated all telephone service to Fresh Start for failure of payment.

Fresh Start thereafter brought this suit against ATX, pursuant to this court's diversity of citizenship jurisdiction under 28 U.S.C. § 1332, seeking injunctive and monetary relief for breach of contract and for violation of the New Jersey Consumer Fraud Protection Act, N.J. Stat. Ann. § 56:8–1 to 8–106. (West 2001).

Plaintiff alleges that ATX has breached the parties' contract by charging Fresh Start higher rates for telephone service than that which they agreed, and has engaged in "unconscionable business prac-

---

**1.** Defendant maintains that the proper name for the defendant is "CoreComm–ATX, Inc.," the successor of ATX Telecommunication Services. However, the caption of this case has not been changed. For the sake of simplicity, I will refer to the defendant as "ATX" or "defendant."

tices" as the term is used in the New Jersey Consumer Fraud Act. Defendant argues that it has corrected and issued a credit for any billing error that may have occurred during the life of the contract, but that Fresh Start has failed to pay the balance due for ATX's services. Defendant has asserted a counterclaim against Fresh Start for the amount of the unpaid balance including late fees ($60,377.39) and for the costs of suit, attorney's fees, and interest.

Currently, before the court is defendant ATX's motion for summary judgment. For the reasons stated below, defendant's motion for summary judgment must be denied.

## I.  FACTUAL BACKGROUND [2]

Plaintiff Fresh Start markets its products through direct calling of current and prospective customers throughout the United States. Plaintiff also provides its customers with toll free "800" numbers, which may be used for placing orders and accessing customer service, the cost of which is billed to Fresh Start.

In 1997, Fresh Start and ATX entered into a contract whereby the defendant agreed to provide plaintiff with long distance and "800" number service. The rates to be charged to Fresh Start by ATX for its telephone service were set out in an agreement called the "Guaranteed Service Plan" or "GSP." Additionally, before Fresh Start began receiving ATX telephone service, it was required to sign a "Service Authorization" form.[3] Although the essential dispute in this litigation concerns whether the rates at which Fresh Start was billed were the agreed upon rates,

precise details of the rate dispute are not necessary to address the grounds raised for relief by defendant's motion.

In March 2001, while reviewing the most recent ATX bill, Noel Fabretti, President of Fresh Start, discovered a billing discrepancy. After discovering the alleged discrepancy, Fabretti contacted ATX and demanded a refund. ATX investigated the matter and agreed that there had been an error as to the rate billed for one type of service Fresh Start was receiving. ATX then issued a credit to Fresh Start for the over-billed amount, claiming that it had corrected the error. Fabretti still maintained, however, that *all* of ATX services were being billed at incorrect rates. Disagreeing with Fabretti's assessment of the rates to be charged under the GSP, ATX declined to issue additional credits to Fresh Start's account. During the dispute Fresh Start stopped paying any portion of its monthly ATX bills and refused to pay the outstanding balance or make payment arrangements. As a result ATX terminated all ATX telephone service to Fresh Start in March 2002. This lawsuit followed shortly thereafter.

## II.  ANALYSIS

### A.  *Summary Judgment Standard*

A court may grant summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" only if its existence or non-existence would affect the outcome of the suit under

---

**2.**  The facts recited below are either undisputed, or if disputed, the court has accepted the plaintiff's version of the facts. All facts are viewed in the light most favorable to plaintiff, the non-moving party.

**3.**  Although the exact contents of the Service Authorization form signed by Fresh Start president, Noel Fabretti, are disputed by the parties, the resolution of that dispute is not necessary for the court to address the defendant's motion for summary judgment.

governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is "genuine" only when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that fact. *Id.* In determining whether there exist genuine issues of material fact, all inferences must be drawn, and all doubts must be resolved, in favor of the non-moving party. *Coregis Ins. Co. v. Baratta & Fenerty, Ltd.*, 264 F.3d 302, 305–06 (3d Cir.2001) (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

Although the moving party bears the burden of demonstrating the absence of a genuine issue of material fact, in a case such as this, where the non-moving party is the plaintiff, and therefore, bears the burden of proof at trial, that party must present affirmative evidence sufficient to establish the existence of each element of his case. *Id.* at 306 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Accordingly, a plaintiff cannot rely on unsupported assertions, speculation, or conclusory allegations to avoid the entry of summary judgment, *see Celotex*, 477 U.S. at 324, 106 S.Ct. 2548, but rather, she "must go beyond the pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Service.*, 214 F.3d 402, 407 (3d Cir.2000).

### B. Count II:[4] Plaintiff's Breach of Contract Claim

A federal district court sitting in diversity must follow the forum state's choice of law rules to determine the applicable statute of limitations period. *See Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); *Deleski v. Raymark Indus.*, 819 F.2d 377, 378 n. 2 (3d Cir.1987). Defendant ATX argues that under the choice of law rules of the forum state, Pennsylvania, the applicable statute of limitations to plaintiff's claim is four years, pursuant to 42 Pa. Cons.Stat. Ann. § 5525(8), the applicable Pennsylvania statute of limitations for contract actions. Applying the four-year statute of limitations to the case at bar, defendant argues that plaintiff's claim for breach of contract is barred because plaintiff failed to institute its action within four years of the alleged breach of the contract, i.e. the date that the first billing invoice was sent to plaintiff. Plaintiff contends that assuming, but not conceding, that the Pennsylvania statute of limitations applies to this case, its breach of contract claim is not barred because it is based upon periodic payments owed for each billing period in which Fresh Start was allegedly overcharged.[5]

**4.** Count I of the plaintiff's complaint seeks injunctive relief against defendant ATX to prevent ATX on a "temporary, preliminary, and permanent basis" from terminating service provided to Fresh Start for the remaining term of their contract. Concurrent with the complaint, Fresh Start filed a motion for a temporary restraining order seeking an order requiring ATX to provide telephone service to Fresh Start pending a preliminary injunction hearing. As of that date, ATX had terminated services at plaintiff's main facility. The Emergency Judge, the Honorable Marvin Katz, denied the motion for a temporary restraining order finding that the contract was ambiguous and the plaintiff's right to emergency relief was unclear.

Defendant argues that, in light of the denial of plaintiff's motion for the temporary restraining order, Count I of plaintiff's complaint is now moot and should be dismissed. Because the remaining term of the contract has long since expired, defendant's motion for summary judgment is denied as moot as to count I and count I should be dismissed from the complaint.

**5.** Because plaintiff assumes for purposes of this motion that Pennsylvania's statute of limitations is the appropriate statute to be ap-

Under Pennsylvania law, the statute of limitations on a breach of contract claim does not begin to run until the cause of action accrues. *Pennsylvania Turnpike Comm'n v. Atlantic Richfield Co.*, 31 Pa. Cmwlth. 212, 375 A.2d 890, 892 (1977), *aff'd* 482 Pa. 615, 394 A.2d 491 (1978). However, Pennsylvania courts have held that "where installment or periodic payments are owed, a separate and distinct cause of action accrues for each payment as it becomes due." *American Motorists Ins. Co. v. Farmers Bank & Trust Co.*, 435 Pa.Super. 54, 644 A.2d 1232, 1235 (1994) (quoting *Ritter v. Theodore Pendergrass Teddy Bear Prods., Inc.*, 356 Pa.Super. 422, 514 A.2d 930, 935 (1986)).

Accordingly, plaintiff's entire breach of contract claim did not accrue at the instant it received the first bill for which it claims it was overcharged. Instead, plaintiff accrued a separate cause action each time plaintiff was allegedly over-billed for service and payment became due. Thus, the statute of limitations period has not run on any claim for breach arising from any bills becoming due (and hence any payment made on those bills) within four years prior to plaintiff's filing of its complaint on March 22, 2002. As such, defendant is not entitled to judgment as a matter of law with respect to plaintiff's claims arising from bills becoming due on or after March 22, 1998.

■ Plaintiff additionally argues that defendant ATX should be estopped from raising its statute of limitations defense as to plaintiffs claims arising from bills becoming due or paid before March 22, 1998. Plaintiff contends that the doctrine of equitable estoppel should be applied to bar the defendant from raising the statute of limitations defense to those claims because plaintiff delayed in filing a claim for over-billing based on defendant's representa-

tions that it would correct the problem. The doctrine of equitable estoppel "prevents a party from asserting a right based on its own action of misrepresentation to the other party and the other party having relied upon the misrepresentation." *Hess v. Gebhard & Co., Inc.*, 769 A.2d 1186, 1194 (2001), *rev'd on other grounds*, 570 Pa. 148, 808 A.2d 912 (2002).

■ The facts needed to make a determination of whether equitable estoppel applies in this situation, however, are not undisputed by the parties. Although defendant does not dispute that its computerized billing system over-billed Fresh Start to a certain extent, *see* Deposition of Toby Orgeron at 52, it claims to have corrected the over-billing with a credit. Plaintiff alleges that, after the initial credit to Fresh Start's account, the defendant misrepresented its intention to address further "billing errors." To the contrary, defendant contends that once it determined that the billing rates were correct, it declined to issue additional credits. Because genuine issues of material fact exist as to whether the doctrine of equitable estoppel applies in this case, the plaintiff's claims that the bills paid from September 1997 (the time of the first bill) to March 22, 1998 are barred by the statute of limitations cannot be resolved on a summary judgment basis.

### C. *Count III: New Jersey Consumer Fraud Act*

The parties next dispute whether the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8–1 to 8–106, should apply to plaintiff's claim that defendant engaged in unconscionable business practices. Because a federal court sitting in diversity must apply the choice of law rules of the forum state, *LeJeune v. Bliss–Salem, Inc.*,

plied to its claim, the court will assume, but not decide, the same.

85 F.3d 1069, 1071 (3d Cir.1996), this court must apply Pennsylvania choice-of-law rules to determine which state's law should be applied.

Pennsylvania choice-of-law analysis provides for a two-part inquiry. First, the court must determined whether there is actually "a conflict between the potentially applicable bodies of law," *On Air Entertainment Corp. v. Nat'l Indem. Co.*, 210 F.3d 146, 149 (3d Cir.2000), or if there is merely a "false conflict." *See LeJeune*, 85 F.3d at 1071. Second, if there is a true conflict, i.e., the conflict is not a false conflict, the court then must determine which state has the greater interest in having its law applied. *See id.*

Plaintiff contends that there is a true conflict between New Jersey and Pennsylvania law in the area of consumer protection because of the differences in the remedies, scope, and pleading and proof requirements under each state's statute. Plaintiff argues that New Jersey's law should be applied because New Jersey has a greater governmental interest in applying its consumer protection law under the circumstances of this case. Although the plaintiff has assumed the existence of a true conflict, the court first must determine under the forum's choice-of-law rules whether the conflict claimed is a true or false conflict.[6]

### 1. *Is there a true conflict?*

■ Under Pennsylvania choice-of-law analysis, a true conflict exists when the governmental interests of two or more jurisdictions would be impaired if their law were not applied. *Lacey v. Cessna Aircraft, Co.*, 932 F.2d 170, 187 n. 15 (3d Cir.1991). By contrast, "a false conflict exists if only *one* jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law." *Id.* at 187 (emphasis added). If a case merely presents a false conflict, "the court must apply the law of the state whose interests would be harmed if its law were not applied." *Id.*

■ In the case at bar, the parties dispute whether the New Jersey Consumer Fraud Act (the "NJCFA") or the Pennsylvania Unfair Trade Practices Consumer Protection Law (the "UTPCPL") should be applied to plaintiff's allegations of unconscionable commercial practices by the defendant. Although both statutes clearly were intended to protect consumers from fraudulent or deceptive business practices, as plaintiff argues, there are distinct differences between the statutes which suggest that there may be conflicting governmental interests which create a true conflict between the laws of the two jurisdictions. Each of these differences will be addressed in turn.

### a. *Remedies available under the NJCFA and the UTPCPL*

Fresh Start argues that there is a true conflict between the New Jersey and Pennsylvania statutes because treble damages and attorney's fees are mandatory under the NJCFA, but discretionary under the UTPCPL. *See Boyes v. Greenwich Boat Works, Inc.*, 27 F.Supp.2d 543, 548

---

**6.** Without discussion of whether a true conflict exists in this case, defendant argues that Pennsylvania law should be applied because, under the Restatement of Conflict of Laws, the law of the forum should be applied unless there are constitutional limitations to doing so. *See* Restatement (Second) of Laws § 6 (1971). However, because this case presents a false conflict, the Restatement formulation does not apply. *See Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206, 212–13 (E.D.Pa.2000) (evaluating the constitutional implications of applying the statutory law of the forum, as directed by the Restatement, to putative class members residing in various jurisdictions but only *after* assuming that there was a true conflict among the laws of the forty states implicated in the suit).

(D.N.J.1998) (comparing Pa. Stat. Ann. tit. 73, § 201–9.2 (West 1993) with N.J. Stat. Ann. § 56:8–2 (West 2001)). The court finds that those differences, such as they are, are not indicative of conflicting governmental interests, i.e., both are intended to protect consumers against fraudulent or deceptive business practices, but rather those differences reflect a qualitative difference in approach as to which remedies are required to deter perpetration of consumer fraud. *See id.* at 548 (stating that both the New Jersey and Pennsylvania statutes "reflect a legislative determination to attack the same evil"). As one New Jersey court put it, "it is unrealistic ... to suggest that the Pennsylvania legislature intended to protect the perpetrators of consumer fraud by holding out the possibility that damage awards might be lower [in Pennsylvania] than New Jersey." *Id.* For those reasons, the court finds that applying the remedies under the New Jersey Consumer Fraud Act will not impair Pennsylvania's governmental interest in protecting consumers from deceptive business practices.

### b. *Class of "persons" protected under the NJCFA and the UTPCPL*

Second, Fresh Start points out that the NJCFA protects a broader class of "persons," than the UTPCPL in that the former includes commercial entities (i.e. corporations and companies) as well as natural persons within the scope of its protections. *See* N.J. Stat. Ann. § 56:8–1(d); *Hundred East Credit Corp. v. Schuster,* 212 N.J.Super. 350, 515 A.2d 246, 248 (1986) (stating that a corporation or other business entity is a "person" entitled to sue under the Act); *Dreier Co. v. Unitronix Corp.,* 218 N.J.Super. 260, 527 A.2d 875, 882 (1986) (finding that corporations were intended to qualify as "consumers" under the Act). The focus of the NJCFA is whether the "merchandise," i.e. goods or services, is offered ei-

ther directly or indirectly to the public, *see* N.J. Stat. Ann. § 56:8–1(c), rather than the purpose for which the merchandise is to be used. To the contrary, the UTPCPL only applies to goods sold or services used "primarily for personal, family, or household purposes." Pa. Stat. Ann. tit. 73, § 201–9.2(a) (West 1993).

The New Jersey statute, therefore, reflects a distinct interest in protecting its commercial entities as well as traditional consumers from fraudulent or deceptive practices. *See Hundred East Credit Corp.,* 515 A.2d at 249. This interest would clearly be impaired if the Pennsylvania statute was applied in this case since, as a corporation, the plaintiff could not state a cause of action under the UTCPL. To the contrary, however, Pennsylvania has no interest in this dispute because the parties are business entities which fall outside the scope of the Pennsylvania statute. *See Financial Software Sys. v. First Union Nat'l Bank,* No. 99–cv–623, 1999 WL 1241088, at *6 (E.D.Pa. Dec. 16, 1999), 1999 U.S. Dist. LEXIS 19479, at *20 (finding that Pennsylvania had no interest in business contracts that were not within the scope of its deceptive practices act). In other words, no Pennsylvania interest protected by the UTPCPL would be impaired by applying New Jersey law.

Furthermore, the underlying purpose of Pennsylvania's Consumer Protection Law is "to prevent unfair or deceptive business practices and fraud." *Pirozzi v. Penske Olds–Cadillac–GMC, Inc.,* 413 Pa.Super. 308, 605 A.2d 373, 376 (1992). This purpose would not be impaired by broadening the protection of the statute to a business or commercial entity. *Cf. Comm., by Creamer v. Monumental Properties, Inc.,* 459 Pa. 450, 329 A.2d 812, 816 (1974) (stating the Pennsylvania's Consumer Protection Law must be liberally construed to effect its purpose of fraud prevention). Therefore, the court finds that applying

the New Jersey Consumer Fraud Act will not impair Pennsylvania's governmental interest in protecting consumers from fraud and deceptive business practices.

### c. Elements to be proven under the NJCFA and the UTPCPL

Lastly, plaintiff Fresh Start argues that there is a significant true conflict between the NJCFA and the UTPCPL because, unlike the UTPCPL, the NJCFA prohibits "unconscionable commercial practices" without requiring reliance. See N.J. Stat. Ann. § 56:8–2 (West 2001) (providing that the "use of any unconscionable commercial practice, deception, fraud . . . in connection with the sale or advertisement of any merchandise[,] . . . whether or not any person has in fact been misled, deceived or damaged thereby" is an unlawful practice) (emphasis added). By contrast, Pennsylvania's statute requires the plaintiff, in order to prove an "unfair or deceptive" business practice (as it is termed in the Pennsylvania statute), to plead and prove "reliance,"[7] as well as causation.[8] Weinberg v. Sun Company, Inc., 565 Pa. 612, 777 A.2d 442 (2001).

New Jersey's explicit exclusion of reliance as an element to be proven under the NJCFA, indicates that New Jersey has an interest in remedying deceptive business practices in cases where common law fraud may not be present. See Cox v. Sears Roebuck & Co., 138 N.J. 2, 647 A.2d 454, 461 (1994) (noting that "the [NJCFA] is designed to protect the public even when a merchant acts in good faith"). This interest would be impaired if the UTPCPL were applied, since plaintiff would be barred from bringing the claim unless it alleges reliance (which as of yet Fresh Start has not done). On the other hand, Pennsylvania's interest in protecting consumers from deceptive business practices and fraud would not be impaired by the application of New Jersey law since recovery for a breach of the practices protected by Pennsylvania law would be available under the New Jersey statute.

### d. Application of New Jersey Consumer Fraud Statute

Because applying New Jersey law would not impair Pennsylvania's governmental interests, the court concludes that the conflict between the New Jersey and Pennsylvania consumer fraud statutes is a false conflict. Accordingly, the court must apply the law of the New Jersey whose interests would be impaired by the application of Pennsylvania law. That being the case, the defendant is not entitled to judgment as a matter of law as to count III and the defendant's motion for summary judgment, therefore, must be denied.[9]

7. There is some dispute amongst federal district courts and the lower courts of Pennsylvania as to whether Weinberg v. Sun Company, Inc. is still good law in light of the 1996 amendment to section 201–2(4)(xxi) of Pennsylvania's UTPCPL. Compare Flores v. Shapiro & Kreisman, 246 F.Supp.2d 427, 432 (finding that the amendment eliminated the need to plead all of the elements of common law fraud, namely "reliance") with Debbs v. Chrysler Corp., 810 A.2d 137 (Pa.Super.2002) (holding that reliance still must be plead by a plaintiff bringing a private cause of action under the UTPCPL). For the purposes of this motion, the court will assume that reliance still must be plead under Pennsylvania's UTPCPL. Because the court ultimately finds that this distinction between the two statutes is not a true conflict, the conflict among Pennsylvania courts on this point is immaterial.

8. The NJCFA also requires a plaintiff to plead and prove causation in order to receive damages. See N.J. Stat. Ann. § 56:8–19.

9. Defendant also seeks summary judgment on Count IV of plaintiff's complaint, construing it as claim for fraud. Plaintiff contends, in actuality, Count IV is merely seeking punitive damages. Since there is no separate cause of action for punitive damages, defendant's motion for summary judgment with respect to this count is denied as moot.

## CONCLUSION

Based on the foregoing analysis, the court shall deny the defendant's motion for summary judgment.

An appropriate order follows.

### *ORDER*

**AND NOW,** this 11th day of **December, 2003,** it is hereby **ORDERED** that defendant's motion for summary judgment (doc. no. 24) as to Counts I, II, III, and IV of plaintiff's complaint is **DENIED.**

**IT IS FURTHER ORDERED** that Count I of plaintiff's complaint is **DISMISSED as moot** and Count IV of plaintiff's complaint is **DISMISSED without prejudice.**[1]

**AND IT IS SO ORDERED.**

---

**1.** Because there is no separate cause of action for punitive damages, Count IV of plaintiff's complaint should be dismissed.